# Naugher v. The State.

*Indictment for Murder.*

1. *Homicide; self-defense; no duty to retreat from dwelling.*—No duty rests upon a person to retreat when assaulted in his own dwelling, or within the curtilage or space usually occupied and used for the purposes of the dwelling; and where in a trial under an indictment for murder, the uncontradicted evidence shows that the fatal shooting occurred either within the defendant's dwelling-house or the space under the same protection as his castle, a charge which instructs the jury that if "the defendant, on coming to his yard, found the deceased in his dwelling-house, or in the act of entering his dwelling-house, and that the deceased so acted as to create in the mind of defendant reasonable belief that himself or any member of his family was in danger of his life or sustaining great bodily harm at the hands of deceased, then defendant, under the law, had a right to shoot deceased and take his life," is not objectionable, in that it ignores the duty of retreat, it being affirmatively shown that the defendant was under no duty to retreat, and the charge should be given.

2. *Same; same; freedom from fault in bringing on the difficulty.*— Where, in such case there is no evidence tending to show that the defendant was at fault in provoking or bringing on the difficulty, such charge is not erroneous because it ignores the question of the defendant being at fault in bringing on the difficulty; the facts hypothesized in the charge negativing fault on the part of the defendant, and the burden being on the State to show that the defendant was not free from fault in bringing on the difficulty.

3. *Charge to the jury; erroneous when assuming as true a fact not borne out by the evidence.*—On a trial for murder where the defendant, as a witness, testifies to previous threats made by deceased against him, and that at the time of the fatal shooting the deceased made another threat to take defendant's life, and that at the time made a demonstration calculated to impress defendant with the reasonable belief that he was in imminent danger, a charge to the jury as to the right of defendant to kill deceased in self-defense, which instructs them that there was no evidence in the case showing or tending to show that there was any difficulty between defendant and deceased at or about the time of the killing, is properly refused, as assuming a fact which is not borne out by the evidence.

4. *Immaterial evidence*—On a trial for murder, where it is shown deceased was shot with a gun, evidence that the brother of the deceased, who had been shooting at a target with defendant, had shot up all his shells but one, is immaterial and irrelevant.

5. *Evidence; admissibility.*—On a trial for murder, where there is evidence tending to show that deceased had, previous to the homicide, made threats against the defendant, evidence that a short time before the killing the defendant and deceased were shooting at a target together, is admissible as tending to show that there was no purpose on the part of the deceased to execute his previous threats, and that they had become reconciled to each other.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. LEROY F. BOX.

The appellant was indicted and tried for the murder of one Powell Hancock, and was convicted of murder in the second degree, and sentenced to the penitentiary for ten years. Several of the witnesses in behalf of the State, testified that on the day Powell Hancock was killed, they heard four gun shots in the direction of the defendant's house, and shortly after met the defendant going from his house; that "the defendant said he had killed one d—d rascal, and would kill another if he fooled with him;" that upon being further told by the defendant that he had killed Powell Hancock, they went to the defendant's house, and found Powell Hancock lying about 20 feet outside of the gate of the defendant's yard, with several gun-shot wounds upon his body; that they examined the deceased, and did not find a pistol or other weapon about him, except a pocket knife, nor did they find any pistol in the house or yard of the defendant.

The testimony for the defendant tended to show that shortly after a difficulty with the brother of the deceased, Fonzo Hancock, in which the said Fonzo Hancock shot at the defendant with a gun, deceased came to his, (defendant's) house; that while standing upon the porch of the defendant's house when the defendant came in view, the deceased put his hand on his right hip pocket, and said to the defendant, cursing him, "Fonzo did not get you, but I will;" that just as the deceased made this remark and put his hand on his hip pocket, the defendant, who was carrying a gun, put his gun down in shooting position, and fired two shots at the deceased; that said Hancock then turned and ran in side of the defendant's house, and just as the defendant was again approaching his house, the deceased ran out of the house with his right hand still in his hip pocket, and as he reached the ground at the bottom of the steps, said to the defendant, cursing him, "I will get you now;" that

thereupon the defendant fired two more shots in quick succession at said deceased, who then ran out of the defendant's front gate, and fell 20 feet beyond. There was further testimony on the part of the defendant that the deceased and his brother, Fonzo Hancock, had made repeated threats against his life, which had been communicated to him. The wife of Fonzo Hancock, the brother of the deceased, testified as a witness for the State that on the morning of the day Powell Hancock was killed, the deceased, and the defendant, after returning from duck hunting together, staid in her yard shooting at a target with their guns; and that all of their shells were shot up while shooting at the target except one, and she was the only one who knew where this shell was. Another witness for the State testified that on the afternoon after the shooting, he passed by the yard of Fonzo Hancock and saw a target that had been shot at with guns. The defendant objected to the testimony of each of these witnesses, and separately excepted to the court's overruling his objections. The defendant requested the court to give the following charges to the jury, and separately excepted to the court's refusal to give each of them as asked: (1.) ''The court charges the jury that the law does not require one who is assailed in his own dwelling to retreat from, but the law permits him, and and says that it is his right, to stand his ground and kill his assailant if it is necessary so to do to save his life, or to protect himself from great bodily harm, provided he is without fault in bringing on the difficulty; and in this case the court charges the jury that if they believe from the evidence that the defendant on coming to his yard found the deceased in his dwelling house, or in the act of entering his dwelling house, and that the deceased so acted as to create in the mind of defendant reasonable belief that himself or any member of his family was in danger of his life or sustaining great bodily harm, at the hands of deceased, then the defendant, under the law, had a right to shoot deceased and take his life, if such shooting was necessary to protect his own life, or that of any member of his family, from sustaining great bodily harm at the hands of deceased.'' (2.) ''The court charges the jury that there is no evidence in this case showing, or tending to show, that there was any difficulty between defendant and deceased, at or about

[Naugher v. The State.]

the time of the alleged killing of deceased by defendant, and if the jury believe from the evidence that deceased was in the house or on the veranda or door steps of defendant's house, where the defendant and his family reside when defendant fired the shot which took the life of the deceased, then, although the jury may find from the evidence that the deceased was not armed, and in no way prepared to take the life of defendant, or do great bodily harm, yet if the jury further believe from the evidence that defendant knew that deceased was a dangerous and vicious man, that the circumstances surrounding the defendant, and under which defendant was placed at the time he fired the fatal shot, were such as to create in his mind a reasonable apprehension of danger to his life or great bodily harm at the hands of deceased, then he was by the law authorized to shoot in self-defense, and if the jury believe that defendant did shoot and take the life of deceased under such circumstances, then the defendant is guilty of no offense, and the jury must acquit him."

JOHN W. INZER and M. M. SMITH, for appellant. Charge number one requested by the defendant should have been given.—*Cary v. State*, 76 Ala. 78 ; *Jones v. State*, 76 Ala. 8.

Charge number two requested by the defendant expressed every element of the law of self-defense under the evidence as adduced in this case, and should have been given.—*DeArman v. State*, 71 Ala. 351; *McDaniel v. State*, 76 Ala. 1.

W. C. FITTS, Attorney-General, for the State.

COLEMAN, J.—The defendant was indicted for murder which resulted on the trial in his conviction of murder in the second degree. The important question in the case arises from the refusal of the court to give charge No. 1 requested by the defendant. Generally in order to sustain the plea of self-defense, it is incumbent upon the defendant to show, first, that at the time there was a necessity to take life, or that the circumstances were such as. to create in the mind of the defendant a reasonable belief that it was necessary in order to save life or to prevent great bodily harm ; second, that there

was no reasonable mode of retreat or escape; and, third, it must not appear that the defendant provoked, or was at fault in bringing on the difficulty. The burden always rests upon the defendant to maintain the first of these propositions. The burden rests upon the defendant to make good the second proposition, except in cases where it affirmatively appears from the evidence that there was no duty upon the defendant to retreat, as where it is shown that the party assaulted was in his own house, or within the curtilage or space usually occupied and used for the purpose of the house, or in some cases of felonious assault.—*Goldsmith v. State*, ante, p. 8; *Goodwin v. The State*, 102 Ala. 87; *Harris v. The State*, 96 Ala. 24; *Christian v. The State*, 96 Ala. 89; *Jones v. The State*, 76 Ala. 8; *Lee v. The State*, 92 Ala. 15. The burden, however, does not rest upon the defendant to show affirmatively that he was free from fault in provoking or bringing on the difficulty. When the ingredients of self-defense have been established, the burden is on the State to show that the defendant was not free from fault. This is the rule declared in *Gibson's Case*, 89 Ala. 121, recognized in *Webb's Case*, in 100 Ala. 52, and re-affirmed in the case of *Holmes v. The State*, 100 Ala. 80, 84. The charge under consideration ignores the duty of retreat, and also the question of defendant's being at fault in bringing on the difficulty. We are of opinion that the uncontradicted evidence shows that the fatal shooting occurred either within the defendant's dwelling house, or within the space under the same protection as his castle. Under the foregoing authorities, the charge was not objectionable in the respect that it ignored the duty of retreat. There is an entire absence of evidence tending to show that the defendant was at fault in provoking or bringing on the difficulty. The burden to show this, as we have seen, rested upon the prosecution. Referring the charge to the evidence in the record, as well as the facts predicated in the charge, the facts negative fault on the part of the defendant. We are of opinion under the evidence in the case the court erred in refusing the defendant the benefit of charge No. 1 as requested.

Charge No. 2 was rightly refused. We can not say there was no evidence to show that there was a difficulty between the deceased and defendant at or about the time of the shooting. The defendant himself testified to pre-

[Byers v. The State.]

vious threats, a threat at the time of the shooting, by deceased to take his life, and a demonstration calculated to impress upon his mind a reasonable belief that he was in imminent danger.

We do not see the legality or materiality of the testimony of the wife of Fonzo Hancock, to the effect that all the gun shells in the house had been used except one, but if this evidence had been competent, it was competent in rebuttal to show that he fired his gun off two or three times afterwards.

The only purpose for which the evidence of shooting at the target was admissible was to show that there was no purpose on the part of the deceased, Powell Hancock, to put in execution previous threats, and that the parties had become reconciled to each other.

Reversed and remanded.