First degree murder; sentence: life imprisonment.
The homicide in question occurred on January 18, 1974, at the Atmore State Prison (now Fountain Correctional Facility). The murder took place during a prison riot, which inmates termed a "revolution."
Appellant was convicted of the murder of correctional officer Luell W. Barrow. Other inmates have also been tried and convicted of crimes resulting from the riot. Johnny Harris was convicted of first degree murder for his complicity in the killing of Officer Barrow, pursuant to Title 14, § 319, Code of Alabama 1940, and was sentenced to death. That sentence has been affirmed by both this court and the Alabama Supreme Court.Harris v. State, Ala.Cr.App., 352 So.2d 460 (1976) affirmed, Ala., 352 So.2d 479 (1977) [Ms. September 9, 1977]. Oscar Lee Johnson was convicted of second degree murder for his part in the killing of Officer Barrow and sentenced to thirty-one years imprisonment. We affirmed. Johnson v. State, Ala.Cr.App.,335 So.2d 663, cert. denied, Ala., 335 So.2d 678 (1976). Appellant was convicted of assault with intent to murder and sentenced to twenty years imprisonment for his part in beating and stabbing a fellow inmate during the riot. We affirmed in Heard v. State, Ala.Cr.App., 335 So.2d 679 (1976).
Details of the rioting are set out more fully in Harris,Johnson, and Heard, supra, and will not be restated herein. The evidence presented at trial in the instant case is amply sufficient to support a finding by the jury that appellant participated as an accomplice in the murder for which he stands convicted. His armed participation in the riot is shown by a number of witnesses. There is a conflict in the testimony between several witnesses as to whether appellant was armed with a knife. Some say he was; some say he was not. However, all observers including appellant's witnesses testified that appellant was armed with a club or "billy stick." Appellant admitted being so armed.
Arthur Dreadin, a correctional officer at the time, gave direct testimony of appellant's participation in the killing. Dreadin said that he and Barrow were overpowered and taken hostage by inmates Johnny Harris and Oscar Johnson. The two guards were taken to a cell by inmates Johnny Harris, Lincoln Heard, Oscar Johnson and others. From the record:
 "A. Oscar Johnson was standing right there beside Mr. Barrow on his left side. Frank Moore was standing right there beside of him.
 "Q. Do you know where this defendant was, Lincoln Heard?
 "A. Lincoln Heard was standing right there close to Johnson.
"Q. Was he in this cell?
"A. Yes, he was in that cell.
 "Q. Do you know whether the inmates who were in this cell, including this defendant, had any weapons at that time?
"A. They was all had weapons or knives in there.
 "Q. Did you see this defendant with a knife when he went in that cell?
"A. Yes, sir, I saw him with a knife.
 "Q. Now, what happened from that point on, if anything?
 "A. Well, Mr. Barrow somebody — he groaned. Groaned kinda.
"Q. What kind of noise did he make?
"A. Like he was killed or something. He groaned.
"Q. Can you reproduce the noise you heard?
 "A. Something like (witness indicating). Something like that. And I looked and he was kind of melting down. So I know it was time for me to go, so I run in. I left out of there and Frank Moore was stabbing me all the time."
Prison guards then assaulted the cell block and quelled the riot. Officer Barrow was found a few minutes later in the cell, dead from twenty-seven stab wounds. His heart "had been sliced in two pieces." *Page 688 
 I
Although the evidence was sufficient to connect appellant with the murder as an aider, abettor or accomplice pursuant to Title 14, § 14, Code of Alabama 1940, neither the weight nor sufficiency of the evidence is presented for review on appeal in the absence of a motion to exclude the State's evidence, request for the affirmative charge, or motion for a new trial.Wilcox v. State, 54 Ala. App. 474, 309 So.2d 510 (1975). For a discussion of the law relative to aiders, abettors or accomplices, see: Stokley v. State, 254 Ala. 534, 49 So.2d 284
(1950); Howell v. State, Ala.Cr.App., 339 So.2d 138 (1976);Hill v. State, Ala.Cr.App., 348 So.2d 848, cert. denied, Ala.,348 So.2d 857 (1977).
 II
Appellant contends the trial court erred in overruling his "Motion to Quash the Indictment and Venire," based on systematic exclusion of blacks and women from the jury rolls in Escambia County. Incorporated in the motion were the same affidavits and statistical data used by appellants in theHarris and Johnson cases, supra, and covered by this court's opinion in those cases.
It is unnecessary to again rule on the merits of appellant's contention because the record on appeal does not show: (1) when the motion to quash was filed in the circuit court; (2) whether it was ever brought to the attention of the trial judge; nor (3) that it was ever ruled on. The appellant is under the duty to see that the record on appeal is perfected. Orum v. State,286 Ala. 679, 245 So.2d 831 (1971). Appellate review is limited to only those matters appearing in the record. Hargrove v.State, Ala.Cr.App., 344 So.2d 823, cert. denied, Ala.,344 So.2d 826 (1977); Graham v. State, 30 Ala. App. 179, 2 So.2d 463
(1941). We find no transcript of a hearing on the motion and no mention of the motion in the judgment entry. Thus there is no ruling by the trial judge before us for review on the motion to quash.
The same rule applies to appellant's discovery motion. Only the motion appears in the record. Nothing in the record shows when it was filed or if it was ever called to the attention of the trial judge. No ruling appears in the record and thus no ruling thereon can be had here.
 III
Appellant contends that testimony given by the brother of the victim had no probative value and appellant's motion for a mistrial should have been granted.
Lawrence Barrow testified that he was the brother of the victim Luell Barrow. The witness was also a prison guard and at the time of the riot was at the guards' "rooming house" about 150 to 200 yards from the prison. He heard the siren alarm and was told his brother was a hostage. He then tried to enter the compound but was unable to do so. Shortly thereafter his brother's body was brought out. It was covered with blood. He observed the inmates coming out of the unit where the riot occurred, and did not see any of the guards beating the inmates. After Barrow's testimony was completed, counsel for appellant made the statement:
 "Your Honor, I fail to see the relevancy of this testimony."
Although not made in the form of an objection, the trial judge nevertheless replied, "I sustain the objection."
After the witness was excused, defense counsel made the following motion:
 "Your Honor, we further move at this time that the Court grant us a mistrial on the basis that . . . of presenting this witness has absolutely no probative value and the sole purpose of presenting this witness was to inflame the jury, and I think that's it."
The trial judge overruled the motion and after a brief recess announced to the jury:
 "Ladies and gentlemen of the jury, I am going to exercise a prerogative that men like to go around saying is reserved for women. I am going to change my mind on a ruling that I have entered here in *Page 689 
this case today. I am going to instruct you that upon reflection it is the opinion of this Court that the testimony of Mr. Barrow offered at this point and this juncture of the trial is immaterial, incompetent, and irrelevant. It may become relevant as this trial goes on but I think to offer it at the time its been offered now that it was irrelevant and incompetent and I am going to instruct you to disabuse your minds of all the testimony of Mr. Barrow at this time, and if it is offered again I will pass upon that at that time. I could possibly let the testimony in under the legal phrase that lawyers like to talk about as res gestae, which means in effect the best I can tell from certain rules of evidence if you can't think of any other good reason to let something into evidence that's the one to try to travel under as an umbrella. But I don't think that umbrella is broad enough in this even though it was a more or less continuous transaction. I think offered at this point and this juncture of the trial it was immaterial and incompetent, and I am going to instruct you to disregard the testimony of Mr. Barrow at this time."
Appellant renewed his motion for a mistrial which was again overruled.
While the testimony of Lawrence Barrow had very little probative value, it was all introduced without objection. Appellant waited until after the witness had been excused before objecting. Justice Beatty in his concurring opinion inChatom v. State, Ala., 348 So.2d 838 (1977) at 842, stated: "A defendant cannot speculate on what a witness will say, and when the answer is responsive but unfavorable move to have that answer excluded. . . ." Here appellant did not merely move to exclude the testimony, he moved for a mistrial.
The trial judge's refusal to grant a mistrial is a matter which lies within his discretion. Appellate courts will not reverse the trial judge's decision in that regard in the absence of a clear showing of abuse of discretion. Shadle v.State, 280 Ala. 379, 194 So.2d 538 (1967).
Barrow's testimony was not of such a prejudicial nature as to inflame the jury against the appellant. Neither was it so prejudicial that proper instruction by the trial judge would not eradicate its effect. We find no law, and are cited to none, holding that admission of mere irrelevant testimony in and of itself constitutes grounds for a mistrial. The trial judge, in excluding the evidence, gave completely satisfactory instructions to the jury, supra. We find no prejudicial error in the ruling or instructions of the trial judge nor abuse of his discretion in this instance.
Appellant raises other points in his brief which have all been decided adverse to the several appellants and amply covered in Harris, Johnson and Heard, supra.
AFFIRMED.
All the Judges concur.